# In the United States District Court
## for the Southern District of Georgia
### Waycross Division

JOHN ALLEN LEWIS,                          *
                                           *
      Plaintiff,                          *
                                           *
v.                                         *               CV 515-77
                                           *
JACK WHISENANT, in his                     *
official capacity as Sheriff               *
of Brantley County, Georgia,               *
                                           *
      Defendant.                          *

## ORDER

    This case is before the Court on a Motion to Dismiss filed by Defendant Jack Whisenant, in his official capacity as Sheriff of Brantley County, Georgia ("Defendant"). Dkt. No. 8. Plaintiff John Allen Lewis ("Plaintiff") has filed a Response in opposition to Defendant's Motion, dkt. no. 14, and Defendant has filed a Reply thereto, dkt. no. 15. For the reasons set forth below, Defendant's Motion to Dismiss (dkt. no. 8) is **GRANTED in part** and **DISMISSED in part as moot**: the Motion is **GRANTED** to the extent that it seeks a dismissal of Plaintiff's federal cause of action, and, because the Court finds that it lacks subject-matter jurisdiction over Plaintiff's remaining state-law claim,

the Motion is **DISMISSED as moot** insofar as it requests a dismissal of the same for failure to state a claim.

**BACKGROUND**

Plaintiff, a resident of Brantley County, was stopped by an officer of the Brantley County Sheriff's Office for a traffic violation on August 20, 2013. Dkt. No. 1, pp. 7-14 ("Pl.'s Compl."), ¶¶ 1, 6. The officer noted that Plaintiff "was very unsteady on his feet, his speech was very slurred, and he couldn't walk heal [sic] to toe." Id. at ¶ 7. Plaintiff had certain prescribed medications with him and showed the officer copies of his written prescriptions. Id. at ¶ 8. The officer arrested Plaintiff for driving under the influence and transported him to the Brantley County Detention Center, where an emergency medical services provider drew his blood. Id. at ¶¶ 7, 9.

Soon after Plaintiff's arrest, his friend called the Brantley County Sheriff's Office and reported that Plaintiff was not intoxicated and, instead, had been suffering from a severe headache and was going to be taken to the hospital on the day of his arrest. Id. at ¶ 10. Plaintiff's mother also called the office to advise that Plaintiff was not intoxicated and needed medical treatment for his headache. Id. at ¶ 11. Plaintiff's daughter then visited him at the detention center two days after his arrest and, upon noticing that his face was drooping and his

speech was slurred, she notified the jail staff that he was not well and needed medical attention immediately. Id. at ¶ 12.

According to Plaintiff, sometime during his three-day detainment, "a jail nurse examined him and determined that he was still intoxicated and could not receive any medical treatment for his severe headache." Id. at ¶¶ 13, 16. Plaintiff alleges that throughout his detainment, he required assistance to use the restroom and "repeatedly requested medical treatment and medication for his severe headache." Id. at ¶ 14. Plaintiff maintains that he never received the necessary medical treatment or medication for his headache during that time. Id. at ¶ 15.

On August 23, 2013, Plaintiff was released from the Brantley County Detention Center on bail. Id. at ¶ 16. Plaintiff went to the Emergency Department in Waycross, Georgia, where he was diagnosed as having a "large intracranial hemorrhage, brain aneurysm." Id. According to Plaintiff, he was advised that if he had received proper and timely medical care for his headache, he would not have suffered as much from the aneurysm. Id. at ¶ 17. Plaintiff asserts that he has continued to suffer neurological defects as a result of the delay in medical treatment. Id. at ¶ 18.

Plaintiff filed suit against Defendant on August 17, 2015. Id. at p. 14. Count one of Plaintiff's Complaint claims that

AO 72A
(Rev. 8/82)

Defendant was negligent in violation of Georgia law, as he owed a duty to provide reasonable and necessary medical treatment to detainees and breached that duty by failing to act to provide Plaintiff with such treatment during his period of confinement. Id. at ¶¶ 19-25. Plaintiff's count two is brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and alleges a violation of Plaintiff's Fourteenth Amendment rights. Id. at ¶¶ 26-33. Specifically, Plaintiff contends that Defendant, while acting under color of state law, was deliberately indifferent to Plaintiff's serious medical needs, in that he "knew of and disregarded an excessive risk to [Plaintiff's] health and safety and/or was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed." Id. at ¶ 29. Plaintiff also asserts the following:

> Defendant . . . [,] as the chief policy maker, caused the alleged constitutional deprivation by (1) conduct of the policy maker himself, (2) an express policy promulgated by the policy maker, and/or (3) an implied policy from a custom or practice that is sufficiently persistent from which to infer the imprimatur of the policy maker, such as lack of suitable training and staff of jail and medical personnel.

Id. at ¶ 30. As relief, Plaintiff seeks damages for his medical expenses and pain and suffering, as well as the costs of this litigation. Id. at ¶¶ 25, 33.

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). A responding party thus may move to dismiss the complaint based on a "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1), or a "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). In addition, a district court must dismiss an action if it finds at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint in setting forth a claim to relief. See Fed. R. Civ. P. 12(b)(6). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). To be plausible on its face, a complaint must set forth enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff, therefore, must plead more than mere labels and conclusions, and

AO 72A
(Rev. 8/82)

a formulaic recitation of the elements of a particular cause of action does not suffice. Twombly, 550 U.S. at 555. Rather, at a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

In evaluating a Rule 12(b)(6) motion, a court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Ordinarily, a court's review on a motion to dismiss is limited to the factual allegations on the face of the complaint, see Iqbal, 556 U.S. at 678, and a party's presentation of matters outside of the pleadings transforms the motion into one for summary judgment, Fed. R. Civ. P. 12(d). However, there are certain instances in which a court may consider matters outside of the pleadings at the dismissal stage, see Davis v. Self, 547 F. App'x 927, 929 (11th Cir. 2013), including, for example, facts that are subject to judicial notice, see Fed. R. Evid. 201(a)-(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

**DISCUSSION**

AO 72A
(Rev. 8/82)

Defendant now moves the Court to dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6). Dkt. No. 8-1. Defendant argues that Plaintiff fails to state a plausible Section 1983 claim for several reasons: (1) Defendant is entitled to sovereign immunity; (2) he is not a "person" subject to suit under the statute; (3) Plaintiff does not sufficiently allege a policy or custom of inadequate medical care in the county jail for which Defendant could be liable as a supervisor; and (4) Plaintiff does not adequately plead any constitutional violation involving deliberate indifference to a serious medical need. Id. at pp. 5-21. Defendant also contends that Plaintiff's state-law negligence claim is subject to dismissal, because county sheriffs are afforded sovereign immunity against negligence claims by jail inmates concerning the provision of medical care. Id. at pp. 4-5 (citing Tattnall Cty. v. Armstrong, 775 S.E.2d 573, 573 (Ga. Ct. App. 2015), overruled on other grounds by Rivera v. Washington, 784 S.E.2d 775 (Ga. 2016)).

Plaintiff responds that each of Defendant's arguments to dismiss his Section 1983 claim lacks merit. Dkt. No. 14, pp. 3-7. Even so, Plaintiff asks that if the Court finds his pleading under Section 1983 to be insufficient, that it allow him to amend his Complaint to cure this deficiency, rather than dismiss it at this time. Id. at p. 5. Plaintiff concedes that the

recent Georgia Court of Appeals decision in Tattnall County, 775 S.E.2d at 573, forecloses his negligence claim against Defendant in his official capacity; however, he maintains that he will file a separate motion requesting the Court's leave to amend the Complaint so as to assert this claim against Defendant individually.  Id. at pp. 2-3.[1]

## I.    Section 1983 Claim

### A.    Sovereign Immunity

The Eleventh Amendment bars a damages action in federal court against a state, its agencies, and its officials in their official capacities, unless the state has waived its sovereign immunity or there has been a valid congressional override.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); see also Abusaid v. Hillsborough Cty. Bd. of Cty. Com'rs, 405 F.3d 1298, 1303 (11th Cir. 2005) ("Eleventh Amendment immunity bars suits brought in federal court when an 'arm of the State' is sued." (quoting Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003))). It is well established that Section 1983 does not abrogate state sovereign immunity.  Will v. Mich. Dep't of St. Police, 491 U.S. 58, 67 (1989).  Thus, at issue here is whether Defendant constitutes an "arm of the State" such that he is entitled to immunity in this case.

---

[1]  While alluded to in his Response, Plaintiff has not made any motion to the Court to amend either count of the Complaint.

The question of whether a defendant entity is an arm of the state for immunity purposes "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Abusaid, 405 F.3d at 1303 (quoting Manders, 338 F.3d at 1308). To determine whether the entity, while engaging in that particular function, acted as an arm of the state, a court must consider the following: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity." Id. (citing Manders, 338 F.3d at 1309).

In Manders, the Court of Appeals for the Eleventh Circuit conducted an in-depth analysis of the Georgia Constitution, as well as Georgia statutes and case law, to ascertain the role and duties of sheriffs within Georgia's local governance regime. 338 F.3d at 1309-18. The specific issue before the Manders Court was whether the defendant sheriff functioned as an arm of the State in establishing a force policy in a jail and training and disciplining his deputies regarding that policy. Id. at 1319. Applying the four-factor test discussed supra, the Court found that the first three factors weighed in favor of immunity, while only the fourth weighed against, and, therefore, concluded that the sheriff was an arm of the State in the performance of

the challenged functions and was entitled to sovereign immunity as a result. Id. at 1328; see also Pellitteri v. Prine, 776 F.3d 777, 780-83 (11th Cir. 2015) (following the Manders analysis and holding that the defendant sheriff was an arm of the State when engaging in the hiring and firing of deputies and thus was immune from suit).

### 1. Allegations Based on Staffing and Training

In the case at bar, the Court concludes that Defendant functioned as an arm of the State in staffing and training the officers or employees who allegedly were involved in Plaintiff's arrest and detention. The first and second Manders factors—how Georgia law defines a sheriff's office and where the law vests control over it—weigh in favor of granting Defendant immunity. See Pellitteri, 776 F.3d at 780-81 (citing Manders, 338 F.3d at 1312-13, 1319-21). Although sheriffs are labeled as "county officers" under the Georgia Constitution, Ga. Const. art. IX, § 1, para. 3(a), Georgia law provides that the "essential governmental nature" of a sheriff's office is to (1) "enforce the law and preserve the peace on behalf of the sovereign State" and (2) "perform specific statutory duties, directly assigned by the State, in law enforcement, in state courts, and in corrections," Pellitteri, 776 F.3d at 780 (quoting Manders, 338 F.3d at 1319). "[S]heriffs in Georgia derive their power and duties from the State, are controlled by the State, and counties

cannot, and do not, delegate any law enforcement power or duties to sheriffs." Pellitteri, 776 F.3d at 780 (quoting Manders, 338 F.3d at 1313). Defendant's authority to employ and train personnel in the areas of law enforcement and corrections is thus derived from the State. See id. (hiring and firing); Manders, 338 F.3d at 1319 (training).

Additionally, Georgia law vests control over a sheriff's exercise of these duties in the State. Pellitteri, 776 F.3d at 781; Manders, 338 F.3d at 1320. The State requires annual training of sheriffs in all counties, and parts of that training focus on the subjects of contemporary law enforcement and corrections practices. See Manders, 338 F.3d at 1320 (citing O.C.G.A. § 15-16-3(a)). It is reasonable to assume that this training includes instruction on a sheriff's hiring and training of deputies in these areas. See id. Furthermore, the State Governor has "broad investigation and suspension powers" with regard to any misconduct by sheriffs in the performance of these duties. Id. at 1321 (citing O.C.G.A. § 15-16-26). Thus, to the extent that Defendant's duties to provide general law enforcement and to administer the corrections facility in Brantley County involve making staffing and training decisions, the State retains "direct and substantial control over [his] duties, training, and discipline[,]" whereas the county has none. See id. at 1322; see also Grech v. Clayton Cty., 335 F.3d

AO 72A
(Rev. 8/82)

1326, 1347 (11th Cir. 2003) ("[The] County does not, and cannot, direct the Sheriff . . . how to operate his office.").

The third factor cuts both ways because—while the State funds annual training for sheriffs, the Governor's disciplinary procedure over sheriffs, and the placement of certain state offenders in the county jails—counties fund most of the expenses of a sheriff's office and the county jail, as mandated by the State. See Manders, 338 F.3d at 1323. Still, the fact that the State requires counties to supply a sheriff's budget by itself does not establish county control over the sheriff's office in the performance of law-enforcement and corrections functions, including how the sheriff staffs and trains his officers. See Pellitteri, 776 F.3d at 782 ("[A]lthough each county sets the total budget for the sheriff's office, it cannot dictate how the sheriff spends those funds." (citing Manders, 338 F.3d at 1323)). Because Brantley County funds the Brantley County Sheriff's Office and the Brantley County Detention Center according to State law, "[S]tate involvement is sufficient to tilt the third factor . . . toward immunity." See Manders, 338 F.3d at 1324; see also Pellitteri, 776 F.3d at 782-83.[2]

---

[2] The Court notes that the Eleventh Circuit stated the following in its analysis of the third factor in Pellitteri:

> Because Lowndes County funds the sheriff's department according to State law requirements, we cannot conclude that this factor weighs in favor of Eleventh Amendment immunity. See Ross v. Jefferson Cnty. Dep't of Health, 701

AO 72A
(Rev. 8/82)

As for the fourth factor, Georgia counties are not liable for judgments against sheriffs in tort or civil rights actions, but, at the same time, there is no law expressly requiring the State to pay such judgments. Pellitteri, 776 F.3d at 783 ("[T]he financial independence afforded the sheriff's office 'creates something of a lacuna' because neither the State nor the County will be required to directly pay for any adverse judgment against the Sheriff's office." (citing Keene v. Prine, 477 F. App'x 575, 579 (11th Cir. 2012); and Manders, 338 F.3d at 1327)). Any adverse judgment against Defendant thus would have to be paid out of the budget of the Brantley County Sheriff's Office, which has the potential to implicate both State and county funds. See id. (citing Manders, 338 F.3d at 1327). As the State treasury would not be required to "foot the bill" in any event, the final factor weighs in favor of denying immunity in this case. See id. (citing Abusaid, 405 F.3d at 1313).

---

F.3d 655, 660 (11th Cir. 2012) (per curiam) (holding that the source of funding for the Health Department does not "tip the balance against immunity because state law requires the county to supply those funds" (quotation omitted)).

776 F.3d at 782. While this statement initially appears to be inconsistent with the outcome in this case, the parenthetical information appended thereto, along with the Court's unequivocal conclusion later in the opinion that "the first three factors . . . weigh[ed] in favor of immunity," id. at 782-83, convince this Court otherwise.

On balance, the Manders factors dictate that Defendant enjoys Eleventh Amendment immunity against Plaintiff's Section 1983 claim insofar as it generally alleges a failure to properly staff and train officers in the areas of law enforcement and corrections. Defendant's Motion is, therefore, **GRANTED** in this regard.

### 2. Allegations Based on Inadequate Medical Care

Defendant, however, did not act as an arm of the State in fulfilling his duty to provide medical care to jail inmates. Significantly, every district court that has addressed this issue has determined that a Georgia county sheriff is an arm of the county when furnishing medical services to inmates. Robinson v. Integrative Det. Health Servs., Inc., No. 3:12-CV-20 CAR, 2014 WL 1314947, at *12 (M.D. Ga. Mar. 28, 2014) (collecting cases); see, e.g., Youngs v. Johnson, No. 4:06-CV-19(CDL), 2008 WL 4816731, at *6-8 (M.D. Ga. Oct. 30, 2008); Dukes v. Georgia, 428 F. Supp. 2d 1298, 1319-22 (N.D. Ga.), aff'd, 212 F. App'x 916 (11th Cir. 2006); Green v. Glynn Cty., No. CIV.A. CV201-52, 2006 WL 156873, at *3 (S.D. Ga. Jan. 19, 2006).

Significant in assessing the first three Manders factors in these cases was that Georgia law—while creating a county sheriff's general duty to maintain corrections facilities and vesting control over the same in the State—specifically defines

the provision of inmate medical treatment as a county function:
"It is counties that have the 'physical custody' of inmates in
their jails and are therefore bound to maintain them, as by
furnishing 'food, clothing, and any needed medical and hospital
attention.'" See, e.g., Dukes, 428 F. Supp. 2d at 1320 (quoting
Manders, 338 F.3d at 1334 (Barkett, J., dissenting); and citing
O.C.G.A. § § 42-5-2(a)). Indeed, the Manders Court stressed
that that case concerned a use-of-force policy and "[did] not
involve medical care, which counties have a statutory obligation
to provide to inmates in county jails." 338 F.3d at 1323 n.43
(citing O.C.G.A. § 42-5-2). A county fulfills this obligation
through its sheriff, and Georgia law provides a county governing
authority "some oversight" of the sheriff's administration of
the jail "through the investigative powers of grand juries which
must inspect jails annually and make appropriate recommendations
to the county commission." Dukes, 428 F. Supp. 2d at 1321
(citing O.C.G.A. §§ 15-12-71(c), 15-12-78 (relating to the
inspection of sanitary conditions at jails)); see also O.C.G.A.
§ 42-4-4(a)(2) (sheriff's duties include providing inmates in
the county jail with medical aid). Furthermore, it is the
county that furnishes the funds for the sheriff to provide
medical necessities to inmates. Dukes, 428 F. Supp. 2d at 1321
(citing Manders, 338 F.3d at 1323 n.43). As to the final
Manders factor, the courts in these cases noted that a judgment

AO 72A
(Rev. 8/82)

against a sheriff relating to inmate medical care would implicate both State and county funds, but nevertheless concluded that this factor did not outweigh the strength of the first three factors, which leaned strongly against granting immunity. See, e.g., id.

Defendant asks that the Court depart from this line of authority on the grounds that it is "entirely reliant on an incorrect statement of law found in a footnote in Manders and constituting only dicta." See Dkt. No. 8-1, pp. 11-13 (citing Manders, 338 F.3d at 1323 n.43). Defendant's argument is unavailing, because, as cited above, several provisions of Georgia law clearly place inmate medical care within the realm of activities for which a county is responsible and in which a sheriff functions on its behalf. Moreover, that the Manders Court discussed this statutory scheme in a footnote does not in any way take away from its instructiveness on this issue. Rather, the Court agrees with the reasoning set forth in the cases that have considered this issue and finds that Defendant was not an arm of the State with respect to his role in providing medical care to Brantley County inmates. Defendant thus is not entitled to immunity against Plaintiff's Section 1983 claim alleging inadequate medical care, and, as such, Defendant's Motion cannot be granted on this basis.

**B.    Supervisor Liability**

In Section 1983 actions, liability must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Braddy, 133 F.3d at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Accordingly, to state a claim for relief against a supervisory defendant, a plaintiff must allege one of the following:

> (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

Plaintiff fails to plausibly allege that Defendant could be held liable for any potential constitutional violation arising from his medical care at the Brantley County Detention Center. Aside from describing Defendant's position as Sheriff for

jurisdictional purposes, Plaintiff's only mention of Defendant in the Complaint appears in the following claims: (1) that he "knew of and disregarded an excessive risk to [Plaintiff's] health and safety and/or was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed"; and (2) that he caused the alleged constitutional violation through "conduct of the policy maker himself," "an express policy promulgated by [him]," or "an implied policy from a custom or practice that is sufficiently persistent from which to infer [his] imprimatur." Pl.'s Compl., ¶¶ 29-30. These claims purportedly connecting Defendant to the alleged constitutional deprivation are wholly conclusory and, therefore, must be disregarded at this stage. See Twombly, 550 U.S. at 555.

Significantly, Plaintiff's factual averments make no reference to Defendant, much less indicate that he had any personal involvement in Plaintiff's arrest or medical care. Without pointing to a single overt act taken by Defendant that could possibly have contributed to a constitutional violation, Plaintiff fails to plead facts to support any claim against Defendant on a personal-involvement theory. See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts

AO 72A
(Rev. 8/82)

of the defendant caused a legal wrong." (quoting Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980))); see also Anderson v. Bradley, No. 3:11-CV-126-CDL-CHW, 2011 WL 6740745, at *2 (M.D. Ga. Nov. 15, 2011) (recommending a dismissal of Section 1983 claims against a county sheriff, in part because the plaintiff made no allegation of any overt act on the sheriff's part (citing Douglas, 535 F.3d at 1322)), report and recommendation adopted, No. 3:11-CV-126 CDL, 2011 WL 6749820 (M.D. Ga. Dec. 23, 2011). Nor do Plaintiff's allegations that he and his family and friends informed certain unidentified officers and jail staff of his condition, see Pl.'s compl., ¶¶ 8-14, permit an inference that Defendant had any knowledge or awareness of his need for medical attention. See Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." (citing Gray v. City of Detroit, 399 F.3d 612, 616 (6th Cir. 2005); and Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004))).[3]

---

[3]  Even if the Court were to assume that Defendant was among the unidentified officers whom Plaintiff maintains were informed of his symptoms, Plaintiff's Complaint would nevertheless be subject to dismissal for failing to state a constitutional claim of deliberate indifference.  Deliberate indifference requires, in part, that a defendant "have been 'subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind.'"  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 834-38 (1994)).  Plaintiff does not satisfy the subjective component of a deliberate indifference claim at this stage, because,

AO 72A
(Rev. 8/82)

Rather, it appears that Plaintiff seeks to hold Defendant liable for an alleged constitutional deprivation based solely on his role as supervisor of the officers and employees who were allegedly involved in the underlying events. Plaintiff, however, does not plead any facts indicating that Defendant had any custom or policy that resulted in his inability to obtain adequate medical care. Plaintiff asserts that he did, in fact, have bloodwork done upon arriving at the Brantley County Detention Center, and that he was seen by the jail nurse after complaining of a severe headache. Pl.'s Compl., ¶¶ 9, 13. While he includes facts suggesting that these measures failed to detect the true cause of his symptoms, see id. at ¶¶ 13, 16-17, Plaintiff does not set forth any factual matter tending to show that this was not an isolated incident but rather reflected a larger custom or policy of providing inadequate medical care at the facility. See Craig v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose

---

as discussed above, Plaintiff offers only conclusory allegations that Defendant had knowledge of an "excessive risk to [his] health and safety" or was aware of certain "facts from which the inference could be drawn" that such a risk existed, see Pl.'s compl., ¶ 29. Even if Plaintiff had included facts demonstrating that Defendant learned of Plaintiff's headache, slurred speech, and drooping face, Plaintiff fails to make any allegation that Defendant understood that those symptoms were characteristic of a brain aneurysm and thus actually drew an inference from those facts. See Walker v. Huntsville, 310 F. App'x 335, 339 (11th Cir. 2009) (no liability for officers and jailers under Section 1983, because "mistakenly failing to identify a brain aneurysm [was] not deliberate indifference").

liability." (quoting <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985))). Contrary to Plaintiff's protestation, <u>see</u> dkt. no. 14, p. 4, these are facts that must be plausibly alleged in the Complaint to survive dismissal. <u>See</u> <u>Wood v. City of Albertville</u>, No. 4:12-CV-02670-KOB, 2013 WL 6839598, at *5 (N.D. Ala. Dec. 23, 2013) ("[S]imply alleging that . . . a[n] [unlawful] policy exists without providing any factual evidence of the policy is not enough to meet the pleading requirement." (citing <u>Pierre v. City of Miramar, Fla., Inc.</u>, No. 13-10668, 2013 WL 4750080, at *4 (11th Cir. 2013))); <u>see, e.g.</u>, <u>Hampton v. Macon Bibb Cty. Transit Auth.</u>, No. 5:14-CV-111 MTT, 2014 WL 2916849, at *5 (M.D. Ga. June 26, 2014) (complaint was subject to dismissal, because the plaintiff's assertion that the defendant had "acted pursuant to a policy, custom, and practice" was "clearly insufficient to establish a claim for municipal liability against the [defendant] . . . under a theory of respondeat superior"). Plaintiff's Complaint also contains no facts regarding any history of abuse by the Brantley County Sheriff's Office or the Brantley County Detention Center.[4]

---

[4] To the extent that Plaintiff may wish to amend his Complaint so as to add the factual matter necessary to meet the plausibility pleading standard, <u>see</u> dkt. no. 14, p. 5, Plaintiff has not properly moved for leave of Court to do so. <u>See</u> Fed. R. Civ. P. 15(a) (a party who seeks to amend his pleading after the time for amending as a matter of course may do so only with his opponent's consent or the court's leave); <u>see</u> <u>also</u> Fed. R. Civ. P. 7(b)(1) (a party's request for a court order must be made by a written or oral motion stating with particularity the basis for seeking an order and the relief sought).

AO 72A
(Rev. 8/82)

Plaintiff thus fails to make a plausible showing that Defendant could be held liable as a supervisor for any constitutional violation that may have occurred with regard to medical treatment during his period of detainment. Accordingly, the Court need not reach Defendant's remaining arguments to conclude that Plaintiff cannot sustain a Section 1983 deliberate indifference claim against him. Defendant's Motion is **GRANTED** as to this claim.

## II. Negligence Claim

Pursuant to 28 U.S.C. § 1367(a), a district court has supplemental jurisdiction over any claim that is "so related" to the claims over which it has original jurisdiction that it "form[s] part of the same case or controversy." However, a court may decline to exercise supplemental jurisdiction over such claim where the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In fact, "dismissal of state law claims [is] strongly encouraged when federal law claims are dismissed prior to trial," as it is best for a state court to resolve claims arising under state law in these instances. Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

The Court preliminarily notes that it enjoys original jurisdiction over Plaintiff's Section 1983 claim, see 28 U.S.C.

§ 1331, and, therefore, has supplemental jurisdiction over his related state-law negligence claim. Nevertheless, because Plaintiff cannot proceed on his Section 1983 claim, his remaining negligence claim should be adjudicated by a Georgia court. The Court thus declines to exercise supplemental jurisdiction over Plaintiff's negligence claim. Defendant's Motion seeking to dismiss this count of the Complaint for failure to state a claim is **DISMISSED as moot.**

### CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss (dkt. no. 8) is **GRANTED in part** and **DISMISSED in part as moot:** The Motion is **GRANTED** as to Plaintiff's Section 1983 claim against Defendant, and this claim is hereby **DISMISSED** for failure to state a claim. The Motion is **DISMISSED as moot** as it relates to Plaintiff's state-law negligence claim, because the Court declines to exercise supplemental jurisdiction over this claim and **DISMISSES** the claim **WITHOUT PREJUDICE** at this time. The Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED,** this 9TH day of August, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)